**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EAST 18TH MANAGEMENT CORPORATION, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>    v.<br><br>CSC SERVICEWORKS, INC.,<br><br>         Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff East 18th Management Corporation ("Plaintiff"), by and through its undersigned attorneys, bring this action on behalf of itself and all others similarly situated against defendant CSC Serviceworks, Inc. ("Defendant"), for breach of the lease agreements entered into between the parties. Plaintiff alleges upon personal knowledge as to itself, and upon information and belief as to all other matters, based upon the investigation made by and through its attorneys, as follows:

**SUMMARY OF ACTION**

1.  Defendant provides laundry services to apartment buildings, condominiums, college and university residence halls, public housing complexes, and other entities. In the regular course of business, Defendant and its predecessors in interest entered into long-term, standardized leases with Plaintiff and members of the putative classes (collectively the "Class" as defined below), providing that Defendant would pay these persons and entities, as compensation for leasing laundry space in their buildings, an agreed-upon percentage of amounts collected from such laundry services after deducting any refunds paid to building occupants and any taxes, fees, or other charges imposed on its equipment or laundry services.

2.      This nationwide class action stems from Defendant's breach of these agreements. In violation of its agreements with Plaintiff and the Class, in May 2017, Defendant began deducting a 9.75% administrative fee from all amounts collected from its laundry services in Plaintiff's and the Class' buildings prior to apportioning these amounts to Plaintiff and the Class based on the agreed-upon percentages (the "Administrative Fee").  The Administrative Fee is in no way contemplated or permitted by Defendant's agreements with Plaintiff and the Class.

3.      As a result of Defendant's conduct, Plaintiff and the Class have been harmed on account of not receiving money they are entitled to under their agreements with Defendant.

## PARTIES

4.      Plaintiff East 18th Management Corporation is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 2530 Ocean Avenue, Suite 11A, Brooklyn, NY 11229.

5.      On March 8, 2011, East 18th entered into a lease agreement with Coinmach Corporation (the "Lease").  A copy of the Lease is attached as Exhibit A.

6.      Defendant CSC Serviceworks, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 303 Sunnyside Blvd., Suite 70, Plainview, New York, 11803.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

8.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

9.     This Court has personal jurisdiction over Defendant because, *inter alia*, Defendant is headquartered in this District and regularly transacts business in the State of New York.

## FACTUAL ALLEGATIONS

10.     Defendant is the largest provider of coin-operated laundry machines to commercial and residential buildings in the United States.

11.     Defendant was formed in May 2013, after Pamplona Capital Management acquired Coinmach Service Corporation and AIR-serve Group LLC.

12.     Since that time, Defendant has embarked on an aggressive acquisition campaign, purchasing Mac-Gray Corporation (one of the nation's largest laundry service providers operating in 44 states), Sparkle Solutions Corporation (Canada's third largest laundry route operator), Continental Laundry Systems (Pittsburg's largest laundry route operator), Laundryland Route, Inc. (one of the largest laundry facility operators in the Midwest), and other entities (collectively, the "Acquired Companies").  In connection with these acquisitions, Defendant took on contracts which the Acquired Companies had with their customers.

13.     In the regular course of business since at least as early as 2010, Defendant and the Acquired Companies entered into long-term, standardized leases with multi-unit residential buildings, commercial entities, colleges, and universities.

14.     Pursuant to these standardized leases, Defendant is granted exclusive use and possession of a laundry room from a lessor and permitted to place laundry equipment in such room.  In exchange, Defendant is required to pay the lessor a certain percentage of the money

collected from Defendant's laundry services in the lessor's building minus any refunds paid to occupants and taxes and fees imposed on the laundry equipment or services.

15.     For example, the Lease provides that "Lessee will pay to Lessor a rent equal to $150.00 plus 50% total gross receipts in excess of $400.00 per month effective upon equipment installation." Ex. A at 1. On information and belief, Defendant's leases with the other members of the Class contain identical or equivalent language.

16.     On May 17, 2017, Defendant's Chief Executive Officer, Mark Hjelle, sent a letter to the Class declaring that Defendant would begin deducting the Administrative Fee of 9.75% from gross collections prior to apportioning revenues purportedly in accordance with Defendant's agreements with Plaintiff and the Class.

17.     The May 17, 2017 letter also declared that Defendant would begin providing the Class with coverage for events related to vandalism — coverage they did not request and did not agree to pay for.

18.     Defendant's website provided the following information as to the charges:

**Applicable Costs & Fees**
The Applicable or Administrative Costs & Fees component accounts for approximately 59% (or more than half) of the total 9.75% fee. The costs associated with applicable charges include: processes of billing, refund processing, website maintenance, clothing claim processing and commission check processing.

**Taxes**
The Taxes component accounts for approximately 16% of the total 9.75% fee. The costs associated with taxes include: taxes and processing of 1099 IRS forms, purchase taxes, sales taxes, VAT taxes, etc.

**Vandalism Fee**
The Vandalism Fee component accounts for approximately 25% of the total 9.75% fee. The costs associated with vandalism include the administration and processing of vandalism cases and related external security costs and measures.

19.     The Lease specifies the few items (refunds and taxes/fees/charges imposed on laundry equipment or services) which may be deducted from gross collections prior to apportioning the remaining amount between Plaintiff and Defendant.  The Lease does not allow Defendant to deduct overhead expenses, such as the expense of preparing bills, website maintenance, and processing refunds, clothing claims, and commission checks from gross revenues prior to apportioning revenues.

20.     The "Taxes" identified by Defendant are either not taxes or not applicable to Plaintiff.  Almost no jurisdiction in the United States, including the State of New York, charges a VAT tax, and preparing 1099 IRS forms is an administrative overhead expense (not a tax).  Additionally, the Lease expressly provides that Defendant may deduct from gross collections prior to apportioning revenues any "commercial occupancy and/or other use, rental or occupancy tax."  As such, Defendant's charging of Plaintiff for sales or purchase taxes paid by Defendant — likely on items having nothing to do with Plaintiff — is a violation of the Lease.  Deducting these amounts from gross revenues prior to apportioning revenues amongst Defendant and Plaintiff is impermissible under the Lease.

21.     The vandalism fee relates to services Plaintiff never requested or agreed to pay.  Deducting such amounts from gross revenues prior to apportioning revenues amongst Defendant and Plaintiff is impermissible under the Lease.

22.     As a result of Defendant's breach of its agreements with Plaintiff and the Class, Plaintiff and the Class have not received the full amounts they are entitled to under their agreements with Defendant.

## CLASS ACTION ALLEGATIONS

23.    Plaintiff bring this action as a class action pursuant to Federal Rules of Civil

Procedure 23(a), (b)(2) and (b)(3), on behalf of the following class:

> All persons and entities who were assessed the Administrative Fee at issue in this
> litigation by Defendant with respect to the lease of any property in the United
> States (the "Nationwide Class").

24.    In the alternative, Plaintiff bring this action as a class action pursuant to Federal

Rules of Civil Procedure 23(a), (b)(2) and (b)(3), on behalf of the following class:

> All persons and entities who were assessed the Administrative Fee at issue in this
> litigation by Defendant with respect to the lease of any property in the State of
> New York (the "New York Class," collectively with the Nationwide Class the
> "Class").

25.    Excluded from the Class are:  (1) any Judge or Magistrate presiding over this

action and members of their families; (2) Defendant, Defendant's subsidiaries, parents,

successors, predecessors, and any entity in which the Defendant or its parents have a controlling

interest and its current or former employees, officers and directors; (3) persons who properly

execute and file a timely request for exclusion from the Class; (4) persons whose claims in this

matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel

and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such

excluded persons.

26.    This action is properly maintainable as a class action because, *inter alia*:

> (a)    The Class is so numerous and geographically dispersed that joinder of all
>
> members is impracticable.  While the exact number of members of the
>
> Class is unknown to Plaintiff at this time and will be ascertained through
>
> appropriate discovery, upon information and belief the Nationwide Class
>
> contains hundreds of thousands of members, and the New York Class

contains thousands of members.  Members of the Class may be identified from records maintained by Defendant, and may be notified of the pendency of this action by mail, e-mail, or other electronic means;

(b)    Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff does not have any interests adverse to the Class;

(c)    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(d)    This action is appropriate as a class action pursuant to Fed. R. Civ. P. 23(a)(2) because common questions of law and fact exist as to all members of the Class and predominate over those questions affecting only individual members.  These common questions include, *inter alia*:

   i.    Whether Defendant's conduct constituted a breach of contract; and

   ii.    Whether Plaintiff and the Class agreed to Defendant's Administrative Fee;

(e)    This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Class, so that the relief sought is appropriate respecting the Class as a whole;

(f)    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for fair and efficient

7

adjudication of this controversy.  Defendant's conduct as described herein stems from common and uniform policies and practices, resulting in damages to the Class that are readily calculable from the Defendant's records and other class-wide evidence.  Defendant has acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

(g)    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Class is impracticable.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede the ability to protect their interests.  Plaintiff is not aware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**COUNT I**
**Breach of Contract**
**(On Behalf of Plaintiff and the Nationwide Class)**
**(*Or in the Alternative, On Behalf of Plaintiff and the New York Class*)**

27.    Plaintiff repeats, realleges, and incorporates by reference the allegations contained above, as though fully stated herein.

28.     The Lease constitutes a written agreement between Plaintiff and Defendant. Upon information and belief, Defendant is also party to leases with other putative members of the Class containing identical or materially identical language.

29.     Plaintiff complied with its obligations under the Lease and provided Defendant with space at in which to operate a laundry room.

30.     The Lease requires that Defendant pay Plaintiff a percentage of the gross revenue collected after deduction of any "customer refunds, superintendant allowances, inspection fees and by commercial occupancy and/or other use, rental or occupancy tax, if any." Upon information and belief, Defendant's leases with the other members of the Class include identical or substantively identical language.

31.     Since May 2017, Defendant has failed to pay Plaintiff and the putative members of the Class the full amounts owed to them under their agreements with Defendant. Instead, Defendant has deducted the 9.75% Administrative Fee from gross collections prior to apportioning revenues as agreed upon in violation of its agreements with Plaintiff and the other putative members of the Class.

32.     Defendant's breach of the Lease with Plaintiff and other putative members of the Class was intentional and done in an attempt to increase Defendant's profits.

33.     Plaintiff and the putative members of the Class have incurred actual damages as a result of Defendant's breach because they have been deprived of, and continue to be deprived of, money they are entitled to under their agreements with Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

A.       Determining that this action may properly be maintained as a class action and certifying Plaintiff as the Class representative and its counsel as Class Counsel pursuant to Rule 23(a), (b)(3) and (g) of the Federal Rules of Civil Procedure;

B.       Finding that Defendant engaged in the unlawful conduct alleged herein;

C.       Awarding Plaintiff and the Class actual, compensatory, and consequential damages;

D.       Awarding Plaintiff and the Class declaratory and injunctive relief;

E.       Awarding Plaintiff and the Class such interest as allowed by law;

F.       Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses; and

G.       Awarding Plaintiff and the Class such other and further relief as may be just and proper under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: New York, New York
       July 16, 2018

Respectfully submitted,

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**

By: _____

Janine L. Pollack
Michael Liskow
270 Madison Avenue
New York, New York 10016
Tel.: (212) 545-4600
Fax: (212) 686-0114
pollack@whafh.com
liskow@whafh.com

Alen R. Beerman
**ROSEMAN, BEERMAN**
**& BEERMAN LLP**
3000 Marcus Ave., Suite #3w6
Lake Success, New York 11042
Tel.: (516) 327-4600
Attorneys@rosenmanbeerman.com

Ben Barnow
Erich P. Schork
Jeffrey Blake
Anthony Parkhill
**BARNOW AND ASSOCIATES, P.C.**
1 North LaSalle Street, Suite 4600
Chicago, Illinois 60602
(312) 621-2000 (p)
(312) 641-5504 (f)
b.barnow@barnowlaw.com
e.schork@barnowlaw.com
j.blake@barnowlaw.com
aparkhill@barnowlaw.com

*Attorneys for Plaintiff*

/799185

# EXHIBIT A

**LEASE AGREEMENT©**

© 1996 Coinmach Corp.
Syosset, NY

This Lease made this 8th day of March, 2011, between

**East 18th Management Corp.**
**860 East 18th Street**
**Brooklyn NY 11230**

(the "Lessor"), said being the owner or authorized agent of the Building known as

**860 East 18th Street**
**Brooklyn NY 11230-1123**
**ACCOUNT # 6027**
**37 Apartments**

(the "Building") and COINMACH CORP., 109 Lafayette Drive, Syosset, New York (the "Lessee").

<u>WITNESSETH:</u>

1. <u>PREMISES.</u> (a) Lessor hereby leases to Lessee or its assigns, the sole and exclusive occupancy, possession and control of certain defined space known as the laundry room(s) in the Building (the "Premises"). Exhibit "A", if attached hereto, contains a legal description of the Building; Exhibit "B", if attached hereto, contains a diagram of the leased Premises showing the location of the laundry room(s). (b) Lessor covenants to provide Lessee with the exclusive and quiet use, possession and enjoyment of the Premises during the term of the Lease and in connection therewith, hereby provides Lessee with the key to the Premises. (c) Lessor hereby authorizes Lessee to execute and file on its behalf the real property transfer tax return that may be required in connection with the execution of this Lease.

2. <u>TERM.</u> The term of this Lease shall be for: **Seven (7)** years from the date of equipment installation.

Lessor may cancel this Lease, solely within 90 days of the initial installation of the equipment at the Premises, on the grounds that Lessor was not reasonably satisfied with Lessees service of the equipment at the Premises, provided, however that upon such termination, Lessor must reimburse Lessee for the cost of all of the work (including, without limitation, contracting, plumbing, tile, painting and other work) performed or paid for by lessee in connection with the Premises of the Lease.

This Lease shall continue for like successive terms after the expiration of the original term unless either party shall give notice of its intention not to renew, sent by certified mail, return receipt requested to the other party, no less than Ninety (90) days and no more than One Hundred and Twenty (120) days prior to the expiration of the original term or any successive term thereafter. During the renewal term, if Lessee is paying a flat-rate fee in paragraph "3", then this flat-rate fee shall be increased by Three (3%) percent.

3. <u>RENT.</u> Lessee will pay to Lessor a rent equal to **$150.00 plus 50% total gross receipts in excess of $400.00 per month** effective upon equipment installation.

Said rental will be paid by check to the office of the Lessor. Notwithstanding any other provision of this Lease, Lessee shall always first be entitled to retain as minimum compensation for each day of the rental period, Three dollars per installed machine, after payment of any utilities if provided by Lessee, and the rent otherwise due to Lessor shall be adjusted accordingly. The base amount per machine per month shall be adjusted annually to reflect increases or decreases in the Consumer Price Index of the Bureau of Labor Statistics of the United States Department of Labor – seasonally adjusted for U.S. average.

4. <u>USE.</u> (a) The Lessee may use the Premises for the purpose of installing and operating coin-metered laundry equipment. Lessor shall provide to Lessee for the operation of said equipment the necessary electricity, heat, gas, water (hot and cold) and also venting for dryers and Lessee shall have the right to connect said equipment through electric, water, gas, sewer and vent lines serving the Building. Lessor shall supply, if required, at no cost to Lessee a sprinkler system within the laundry room(s). No charge shall be made to the Lessee for water, gas, electricity or use of sewer and vent lines. (b) Lessor shall not install or permit any person other than Lessee to install laundry equipment or drying lines in the Building and shall, at its own expense, maintain the Premises in clean condition, clean the exterior of the equipment and the lint traps on the dryers, cause prompt removal of rubbish, and keep the Premises available for use during the hours of 7 A.M. to 10 P.M. daily.

5. <u>INSTALLATION. SIGNS AND MAINTENANCE OF EQUIPMENT.</u> (a) Lessee will, at its own cost and expense, supply, install, operate and maintain such coin-metered laundry equipment as it may deem advisable during the term of this Lease. Title to all equipment, including fixtures, wiring and plumbing supplied or installed by Lessee shall remain with the Lessee, who shall have the right to remove same at the expiration or other termination of this Lease. (b) If, during the term of this Lease, Lessee replaces all of the washers or all of the dryers at the Premises with equipment comparable in quality to that originally installed, then the term of this Lease shall be extended for an additional Three (3) years. Lessee agrees to give Lessor Ten (10) days written notice in advance of installation. Failure of Lessor to notify Lessee not to install shall be deemed a mutual consent to such replacement and Lease renewal. (c) Lessee assumes complete responsibility for its equipment in the case of fire and/or theft and indemnifies Lessor from any and all claims for personal injuries or other damages arising out of the use of said equipment provided that Lessor's negligence or the negligence of anyone acting on the behalf of Lessor is not the cause of said fire and/or theft, claims or damages. Lessee agrees, at its own expense, to carry public liability insurance covering such laundry equipment with limits of not less than $15,000,000/15,000,000 and property damage with limits of not less than $15,000,000/15,000,000. (d) It shall not be grounds for termination of this Lease by Lessor, that all or any part of the Premises or the equipment is damaged or rendered unusable or inoperable by fire or other casualty (e) Lessor shall permit Lessee to affix its name and/or any sign to the laundry equipment and in the laundry room(s) and Lessor shall not remove or permit the removal of Lessee's name and/or signs so affixed.

6. <u>SERVICE.</u> Lessee shall service, maintain and repair Lessee's washing machines and dryers at the Premises (the "Equipment") so that same will be in good working order. Lessee shall service, maintain and repair Lessee's washing machines and dryers at the Premises (the "Equipment") so that same will be in good working order. Such service, repair and maintenance shall be provided within twenty-four (24) consecutive hours (after telephone notice to Lessee in accordance with Lessee's procedures). In computing the twenty-four (24) hour period referred to above, the following will be excluded: legal holidays when Lessee's employees do not work, and any other circumstances beyond

Lessee's control that prevent service, repairs or maintenance including, without limitation, ice or snow storms, hurricanes or other dangerous or other unusual weather conditions, strikes, unavailability of parts or equipment or any other circumstances beyond Lessee's control.  Such service, repair and maintenance shall be provided at Lessee's cost and expense and shall include the replacement of worn out, broken or defective parts in the Equipment, provided, however, that: (i) the repair or damage to the Equipment is not caused by theft, abuse, vandalism, fire, flooding, gas explosion, electrical power failure or lack of adequate water or electrical supply, (ii) the Equipment is used and/or operated in accordance with the directions posted on the Equipment and/or at the Premises, and (iii) Lessee is given prompt notice of the alleged problem in accordance with its procedures.

7. <u>VACANCY RATE</u>. Should the vacancy rate exceed Seven (7%) percent of the total number of apartment units in any month during the term of this Lease, and Lessee is paying a flat-rate fee in Paragraph "3", then this flat-rate fee will be pro-rated to reflect the actual number of occupied apartments.

8. <u>TERMINATION</u>. If during any period of Three (3) months, Lessee's proceeds from said laundry equipment, after payment of rent and any utilities, average less than One ($1.00) dollar per machine per day, or after excessive vandalism or pilferage of the equipment, then Lessee shall have the option to terminate this Lease or pay monthly rent equal to 55% of the net collections (i.e., the gross collections less the payment of utilities(if paid for by Lessee) and any other monies paid by Lessee under the Lease, with Thirty (30) days notice to Lessor, sent by certified mail.

9. <u>SALE OF PREMISE</u>. This Lease shall be binding upon and inure to the benefit of all future owners, and the heirs, assigns, administrators, executors and successors of both the parties hereto, and it is the intention of the parties hereto that this Lease runs with the land and Premises. Lessor agrees that in the event of any sale, transfer or conveyance of the Building, Lessor will obtain an assumption in writing by the transferee agreeing to be bound by the terms and conditions of this Lease. However, any sale, transfer or conveyance of the Building shall be subject to this Lease and this provision shall be self-operative; no further instrument shall be required to effect this purpose.

10. <u>NOTICE OF DEFAULT</u>. Each party agrees that it will notify the other in writing by certified mail, return receipt requested, of any claimed breach of this Lease. Each party further agrees not to declare the other in default of any of the terms or conditions of this Lease unless the party who has received notice of any claimed breach fails to commence to cure the claimed breach within Sixty (60) days after receiving said notice.

11. <u>STATUS QUO</u>. In the event that Lessor declares Lessee to be in default for other than its failure to pay rent or seeks to terminate or cancel this lease contrary to its terms, then Lessor agrees not to deny Lessee access to the Premises and further agrees that Lessor will not remove or disconnect or cause to be removed or disconnected the Lessee's coin-metered laundry equipment until such time as the claimed default and/or any alleged termination or cancellation of this Lease has been finally adjudicated by a Court of Law, provided that Lessee continues to pay Lessor the rent required by the terms of the Lease. In the event that Lessor violates or threatens to violate the terms of this Paragraph "11 ", then Lessor hereby consents to Lessee restraining said violation or threatened violation by obtaining injunctive relief including, but not limited to, a temporary restraining order and preliminary injunction.

12. <u>ENTIRE AGREEMENT: FURTHER RIGHTS</u>.  (a) This Lease contains the entire agreement between the parties and all prior negotiations, representations and agreements are merged herein.  (b) This Lease may not be waived, altered or modified except by an agreement in writing and signed by the parties hereto.  (c) At the expiration, cancellation or termination of this Lease or of any renewal thereof, Lessee shall be provided, in writing with all of the terms and conditions, and a copy of any bona fide Lease and/or Bid (collectively defined as the "Bid") to provide coin-metered, card-based, computerized or other form of laundry equipment, sales and/or services to the Premises.  Lessee shall have the right of first refusal to meet the Bid on terms, which are substantially equivalent to the terms of the Bid.  Lessor agrees that a bona fide Bid must be on terms and conditions, which are commercially reasonable.  Should Lessor not provide Lessee, in writing, with any bona fide Bid to take effect at the expiration, cancellation or termination of this Lease or any renewal thereof, then the terms of this Lease shall continue in effect until such time as Lessor has provided Lessee with a bona fide Bid and Lessee has been afforded its right of first refusal, as provided herein. Lessee shall advise Lessor of its decision whether it will match a bona fide Bid within 45 days of Lessee's receipt of said bona fide Bid. It is expressly agreed that the right of first refusal is reaffirmed and shall continue for a period of two years after this Lease is terminated. (d) The amount of rent provided in paragraph 3 above shall be reduced by any customer refunds, superintendent allowances, inspection fees and by commercial occupancy and/or other use, rental or occupancy tax, if any.  (e) The invalidity of any provision of this Lease shall not invalidate the remaining provisions of this Lease, but the remaining provisions may be enforced as though the invalid term were not applied to this Lease.  (f) The Lessor represents that the building possesses the required Certificate of Occupancy for the laundry room(s).  (g) The undersigned represent that they are duly authorized to execute this Lease on behalf of each of the respective parties hereto.  (h) It is hereby agreed that all actions, suits or proceedings between Lessee and the Lessor arising out of, in connection with or relating to this Lease, or the interpretation, performance of breach thereof, shall be resolved in the Supreme Court of the State of New York in the County of Nassau or in the United States District Court for the Eastern District of New York.  Lessee may also institute any action, suite or proceeding in any court of competent jurisdiction and shall be construed and interpreted in accordance with and governed by the laws of the State of New York without regard to the conflict of laws and provisions thereof.  It is expressly understood and agreed that the terms of this Lease shall continue in any renewal period or any month-to-month tenancy.

13.  LESSEE shall install Two (2) brand new commercial LG washers initially metered at $1.75 per complete wash cycle, and Two (2) commercial Speed Queen dryers initially metered at $1.75 per 30-minute dry cycle.  LESSEE shall have the right to set the metering charges.

14.  LESSEE shall install an ESD Smart Card System in the laundry room for the convenience of the residents.

15.  LESSEE shall provide each family with an initial Laundry card with a $5.00 value already added to it.

15.  LESSEE shall install electric to accommodate the equipment.

16.  LESSEE shall install steel bases to accommodate the front-load washers.

(860 E 18th Street)

17.  LESSEE shall paint the laundry room one (1) time during the term of this Agreement in a color of your choice as selected below:

Ceiling (#                    )    Walls (#                         )

18.  LESSEE shall install new Vinyl Tile flooring.

Floor (#                    )

19.  LESSEE shall install One (1) table, Two (2) chairs, and Two (2) laundry carts in the laundry room for the comfort and convenience of the residents.

20.  *Lessee shall install ventilation /exhaust system.*

In the event that any signature is delivered by facsimile transmission, PDF, electronic signature or other similar electronic means, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such signature page were an original thereof.

**IN WITNESS WHEREOF,** the parties have executed this Lease the day and year first set forth above.

LESSOR:   East 18th Management Corp.

BY: _____

PRINT NAME: *President*

TITLE: *Albert Srour*

FED ID#: *27 - 4028560*

DAYTIME TELEPHONE #: *718 388 - 5283*

LESSEE: COINMACH CORPORATION

BY: _____
MICHAEL CLARK
SALES MANAGER

If other than Owner, specify Owner:

_____
Name

_____
Address

_____
E-Mail Address

(860 E 18th Street)