```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
EAST 18TH MANAGEMENT CORPORATION,
individually and on behalf of all others similarly situated,

                         Plaintiff,
                                                                    MEMORANDUM & ORDER
            -against-
                                                                    18-CV-4068 (NGG) (RML)

CSC SERVICEWORKS, INC.,

                         Defendant.
-------------------------------------------------------------------X
```
NICHOLAS G. GARAUFIS, United States District Judge.

In this putative class action, Plaintiff East 18th Management Corporation brings this action against Defendant CSC ServiceWorks, Inc. alleging breach of the lease agreements entered into between the parties (Compl. (Dkt. 1).) Before the court is Defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, to strike nationwide class allegations and inapplicable remedies pursuant to Federal Rules of Civil Procedure (12)(f) and 23(c)(1)(a). (See Def. Mot. to Dismiss ("Mot.") (Dkt. 19).) For the reasons stated below, Defendant's motion is GRANTED.

I.      BACKGROUND

The court takes the following statement of facts largely from Plaintiff's complaint, the well-pleaded allegations of which the court generally accepts as true for purposes of Defendants' motion to dismiss. N.Y. Pet Welfare Ass'n v. City of New York, 850 F.3d 79, 86 (2d Cir. 2017).

1

### A. Defendant's Business

Defendant is the largest provider of coin-operated laundry machines to commercial and residential buildings in the United States. (Compl. ¶ 10.) Since its formation in 2013, Defendant has acquired "Mac-Gray Corporation (one of the nation's largest laundry service providers operating in 44 states), Sparkle Solutions Corporation (Canada's third largest laundry route operator), Continental Laundry Systems (Pittsburgh's largest laundry route operator), Laundryland Route, Inc. (one of the largest laundry facility operators in the Midwest), and other entities." (Id. ¶¶ 11-12.)

Through its regular course of business, Defendant and its acquired companies have "entered into long-term, standardized lease agreements with multi-unit residential buildings, commercial entities, colleges, and universities." (Id. ¶ 13.) Pursuant to these agreements, Defendant is granted exclusive use and possession of a laundry room and is permitted to place laundry equipment in such room. (Id.) In exchange, Defendant pays these entities an agreed-upon percentage of amounts collected from its laundry services after deducting any refunds paid to the building occupants and any taxes, fees, or other charges imposed on its equipment or laundry services. (Id. ¶¶ 1, 14.)

On May 17, 2017, Defendant's Chief Executive Officer, Mark Hjelle, sent a letter to Plaintiff announcing "that Defendant would begin deducting an Administrative Fee (the Administrative Fee) of 9.75% from gross collections prior to apportioning revenues to the Plaintiff and others in the purported class" and that the cost would cover events related to vandalism, which Plaintiff contends they did not request and did not agree to pay for. (Id. ¶¶ 16-17.) Defendant's website explained that the Administrative Fee covered "processes of billing,

2

refund processing, website maintenance, clothing claim processing and commission check processing" as well as costs related to taxes, including "taxes and processing of 1099 IRS forms, purchase taxes, sales taxes, VAT taxes, etc." (Id. ¶ 18.)

### B. The Lease Agreement

The lease agreement ("lease") between Plaintiff and Defendant began on August 5, 2011 for an initial seven-year term. (See Lease (Compl., Ex. A) (Dkt. 1 at ECF p. 13) (Decl. of Stacy Weaver (Dkt. 19-2) ¶ 2; see also ¶ 4.) The initial term of the lease expired on August 4, 2018; however Plaintiff allowed the lease to automatically renew for another seven-year term. (Id.) Plaintiff alleges that, since May 2017, it received lease payments subject to the Administrative Fee. (Compl. ¶ 31.) Plaintiff does not allege that it ever responded to Defendant's communication or rejected the implementation of the Administrative Fee prior to filing this lawsuit. (Mot. Ex.1 ¶ 9.) On July 16, 2018, fourteen months after receiving Defendant's notice about the Administrative Fee and three weeks prior to the commencement of the new lease term, Plaintiff filed this lawsuit. (Compl.)

### C. Present Action

Plaintiff alleges that the Administrative Fee violates the lease because the "lease does not allow Defendant to deduct overhead expenses, such as the expense of preparing bills, website maintenance, and processing refunds, clothing claims, and commission checks from gross revenues prior to apportioning revenues." (Compl. ¶¶ 19-21.) According to Plaintiff, it did not request services related to the vandalism fee nor did it agree to pay for the cost of these services. (Id.)

Defendant claims to have cured the alleged breach pursuant to the lease's notice-and-cure provision, which allows a breaching party to commence to cure any claimed breach within sixty

3

days after receiving notice of said breach. (Mot. at 6-7; Lease ¶ 10). On August 30, 2018, Defendant's counsel informed Plaintiff's counsel of its decision to cure the alleged breach by crediting Plaintiff for the deduction of the Administrative Fee and discontinuing the Administrative Fee for the remainder of the current lease term. (See Pl. Resp. in Opp'n to Mot. at 3 ("Pl. Opp'n") (Dkt. 20).) A check in the amount of $63.56 was initially routed to Plaintiff and then re-routed to Defendant's counsel upon the request of Plaintiff's attorney. (Sept. 7, 2018 Paul Williams Letter (Dkt. 19-4).) On September 12, 2018, Plaintiff's counsel wrote a letter to Defendant's counsel rejecting the proffered reimbursement, contending the check (1) did not resolve the Defendant's ongoing improper imposition of the Administrative Fee to the nationwide class and (2) was an inadequate remedy because Plaintiff is entitled to attorney's fees and other expenses it has incurred from this action. (Sept. 12, 2018 Michael Liskow Letter (Decl. of Michael Liskow, Ex. C) (Dkt. 20 at ECF p. 12).)

## II. PROCEDURAL HISTORY

Plaintiff filed its complaint on July 16, 2018. (Compl.) On December 19, 2018, Defendant filed its fully briefed motion to dismiss. (See Mot. Pl. Opp'n; Def. Reply in Supp. of Mot. to Dismiss ("Def. Reply") (Dkt. 21).) On June 18, 2019, Defendant submitted notice of supplemental authority regarding a recently published opinion in a case involving Defendant. (Def. Not. of Suppl. Authority (Dkt. 23).)[1] On June 19, 2019, Plaintiff submitted its response in opposition to Defendant's notice of supplemental authority. (Dkt. 24.)

---

[1] See MJM Visions v. CSC Seriveworks., Inc., No. 18-cv-04452 (LIG), 2019 WL 2451936 (E.D.N.Y. June 12, 2019).

4

## III. LEGAL STANDARD

### A. Subject Matter Jurisdiction

A claim is "properly dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "Pursuant to Rule 12(b)(1), dismissal for lack of subject matter jurisdiction is appropriate if the Court determines that it lacks the constitutional or statutory power to adjudicate the case." Lleshi v. Kerry, 127 F. Supp. 3d 196, 199 (S.D.N.Y. 2015) (citing, inter alia, see Makarova, 201 F.3d at 113). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." Giammatteo v. Newton, 452 F. App'x 24, 27 (2d Cir. 2011) (citing Makarova, 201 F.3d at 113). In resolving a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," Nat. Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006). On such a motion, a court may consider evidence outside the pleadings, such as affidavits and exhibits. Makarova, 201 F.3d at 113.

### B. Failure to State a Claim

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007) (per curiam). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

In reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005). "[W]hatever documents may properly be considered in connection with the Rule 12(b)(6) motion, the bottom-line principle is that once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (citation and internal quotation marks omitted).

## IV. DISCUSSION

Defendant raises two arguments in its motion to dismiss.[2] First, Defendant argues Plaintiff's claim should be dismissed on jurisdictional grounds pursuant to Federal Rule of Civil Procedure 12(b)(1), contending that the claim is both moot and not ripe.[3] (Def. Mem. in Supp. of Mot. to Dismiss ("Mem.") (Dkt. 19-1) at 1-2.) Second, Defendant argues Plaintiff's claim should be dismissed on substantive grounds pursuant to Federal Rule of Civil Procedure

---

[2] Defendant also moves to strike Plaintiff's nationwide class allegations and request for injunctive relief. (Def. Mem. in Supp. of Mot. to Dismiss ("Mem.") (Dkt. 19-1) at 10-11.) The court need not address these arguments because the court dismisses this action for lack of subject matter jurisdiction.

[3] Mootness ensures that the parties interests exist throughout the "life" of the lawsuit. Samele v. Zucker, 324 F. Supp. 3d 313, 327 (E.D.N.Y 2018) (citing Comer v. Cisneros, 37 F. 3d 775, 798 (2d Cir. 1994)). A party cannot moot its case by ending its unlawful conduct once sued. Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)). However, a "case is moot when the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome." Samele, 324 F. Supp. 3d at 327 (citing Cty. of L.A. v. Davis, 440 U.S. 625, 631 (1979)). The court need not address whether the issue is moot because the action is not ripe for review. Jungels v. N.Y., 50 Fed. App'x 43, 45 (2d. Cir. 2002).

6

12(b)(6), asserting Plaintiff failed to allege that Defendant breached the lease and that Plaintiff met a condition precedent in the lease. (Mem. at 2.) When faced with a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), the court must address the 12(b)(1) arguments first. GW Holdings Group, LLC v. US Highland, Inc., 367 F. Supp. 3d 78, 80-81 (S.D.N.Y. 2019) (citation omitted). Thus, the court need not address Defendant's Federal Rule of Civil Procedure 12(b)(6) motion because the court dismisses this action on jurisdictional grounds for the reasons stated below.[4]

Ripeness is a jurisdictional issue which the court is obliged to consider first. Murphy v. New Milford Zoning Com'n, 402 F.3d. 342, 347 (2d Cir. 2005) (citing Vandor, Inc. v. Militello, 301 F. 3d 37, 38 (2d Cir. 2002) (per curiam). "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003) (citation and quotation marks omitted). This doctrine "prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." Ross v. Bank of Am., N.A. (USA), 524 F.3d 217, 226 (2d Cir. 2008).

The ripeness doctrine requires a two-prong inquiry into (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." Murphy, 402 F.3d at 347 (internal quotations omitted) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S.

---

[4] The court notes that Plaintiff's lawsuit is not the only action against Defendant that has been filed in this district. While the disputed lease contained different contractual language from the present and was governed by California law, Judge Glasser granted Defendant's motion to dismiss for lack of subject matter jurisdiction. See MJM Visions v. CSC Seriveworks., Inc., No. 18-cv-04452 (ILG), 2019 WL 2451936 (E.D.N.Y. June 12, 2019).

99, 97 (1977)). The first prong requires a weighing of the sensitivity of the issues presented and whether there is a need for more factual development before adjudication. Id. The second prong requires courts "to gauge the risk and severity of injury to a party that will result if the exercise of jurisdiction is declined." Id. (citing Abbott Labs, 387 U.S. at 149). The plaintiff bears the burden of pleading ripeness, indicating that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to justify judicial resolution." Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc., 958 F. Supp. 2d 507, 518 (S.D.N.Y. 2013) (quoting Marchi v. Bd. Of Coop. Educ. Servs., 173 F.3d 469, 478 (2d Cir. 1999) (quotation marks and citations omitted)).

Defendant argues that, because Plaintiff did not provide it with notice and an opportunity to cure an alleged breach prior to filing suit, this action is not ripe for review.[5] A claim is not ripe for adjudication when a contractual condition precedent has not been met. Sirob Imports, Inc. v. Peerless Ins. Co., 958 F. Supp. 2d 384, 389 (E.D.N.Y. 2013), aff'd, 558 F. App'x 32 (2d Cir. 2014); MBIA Inc. v. Certain Underwriters at Lloyd's, London, 33 F. Supp. 3d 344, 356 (S.D.N.Y. 2014). In accordance with the choice of law provision in the parties' lease (Lease ¶ 12(h)), the court will apply New York law to determine whether the notice-and-cure provision was intended to be a condition precedent prior to filing suit.

### A. Notice-and-Cure Provision

It is well established under New York law that contracts are to be construed in accordance with the parties' intent by looking at the four corners of the document. Kortright

---

[5] The alleged breach is a failure to pay rent due to Defendant's imposition of the Administrative Fee, which Plaintiff claims falls outside the scope of deductions permitted under the lease.

8

Capital Partners LP v. Investcorp Inv. Advisers Ltd., 327 F. Supp. 3d 673, 680 (S.D.N.Y. 2018) (citing MHR Capital Partners LP v. Preestek, Inc., 912 N.E.2d 43, 47 (N.Y. 2009)). A written agreement that is "complete, clear, and unambiguous on its face must be enforced according to the plain meaning of its terms." Id. at 680 (quoting MHR Capital Partners LP, 912 N.E.2d at 47). New York courts emphasize substance and a sensible meaning of words over form. Collins v. Harrison-Bode, 303 F.3d 429, 433 (2d Cir. 2002) (citing Kass v. Kass, 696 N.E.2d 174, 181 (N.Y. 1998)).

The parties' lease includes the following notice-and-cure provision ("paragraph 10"):

> NOTICE OF DEFAULT. Each party agrees that it will notify the other in writing by certified mail, return receipt requested, of any claimed breach of this Lease. Each party further agrees not to declare the other in default of any of the terms or conditions of this Lease unless the party who has received notice of any claimed breach fails to commence to cure the claimed breach within Sixty (60) days after receiving said notice.

(Compl. ¶ 10.)

The critical language within the notice-and-cure provision is the term "unless." Courts have continuously held the terms "unless," "if," and "until" to be "unmistakable language of condition" rather than a promise. Kortright Capital Partners LP, 327 F. Supp. 3d at 681 (quoting Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co., 660 N.E. 2d 415, 418 (N.Y. 1995)). A condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Capital, Inc., 821 F.3d 297, 305 (2d Cir. 2016) (quoting Oppenheimer & Co., 660 N.E. at 418). The court interprets the notice-and-cure provision to mean that each party cannot be in breach of the lease unless it was first provided with notice of any claimed breach and a 60-day opportunity to cure any claimed

9

breach. The prescribed method of notice is in writing, via certified mail, return receipt requested.

Plaintiff argues that the notice-and-cure provision only requires a party to provide notice and an opportunity to cure prior to declaring the other in default of any terms or conditions of the lease and is silent as to whether notice is a condition precedent that must be satisfied prior to the filing of a lawsuit. (Pl. Opp'n at 8.) Moreover, Plaintiff contends that the notice-and-cure provision uses the terms "breach" and "default" in different ways, and that the only reasonable interpretation is that "default" means something more than breach, such as total breach. (Id.) In making this argument, Plaintiff relies on U.S.W. Fin. Servs Inc. v. Marine Midland Realty Corp., 810 F. Supp. 1393, 1396, 1404 (S.D.N.Y. 1992), where three connected but disputed documents between multiple parties were in dispute. There, the court found that the meaning of the terms "default" and "curable" were disputed issues of fact because there was a direct clash as to whether the parties intended a third-party to have notice and an opportunity to cure prior to termination. This case is distinguishable because the court is asked to look at only one lease agreement between only two parties. Here, the terms "breach" and "default" are clearly separate legal concepts that are not being used in this contract interchangeably or in different ways.[6] Where parties dispute the meaning of contractual language, the court must "give effect to the expressed intentions of the parties." Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010) (citing Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d

---

[6] See, e.g., Black's Law Dictionary (10th ed. 2014) (defining "default" as "[t]he omission or failure to perform a legal or contractual duty"; defining "breach of contract" as a "[v]iolation of a contractual obligation by failing to perform one's own promise, by repudiating it, or by interfering with another party's performance"; and defining "material breach" as "[a] breach of contract that is significant enough to permit the aggrieved party to elect to treat the breach as total (rather than partial), thus excusing that party from further performance and affording it the right to sue for damages.")

10

1274, 1277 (2d Cir. 1989)). The best evidence of the parties' intentions is what is written in the agreement itself. Greenfield v. Phillies Records, Inc., 780 N.E.2d 166, 170 (N.Y. 2002). The paragraph proceeding the notice-and-cure provision helps ascertain the intended meaning of the term "default." The parties lease agreement includes the following provision ("paragraph 11"):

> STATUS QUO. In the event that Lessor declares Lessee to be in default for other than its failure to pay rent or seeks to terminate or cancel this lease contrary to its terms, then Lessor agrees not to deny Lessee access to the Premises and further agrees that Lessor will not remove or disconnect or cause to be removed or disconnected the Lessee's coin metered laundry equipment until such time as the claimed default and/or cancellation of this Lease has been finally adjudicated by a Court of Law, provided that Lessee continue to pay Lessor the rent required by the terms of the Lease. In the event that Lessor violates or threatens to violate the terms of this Paragraph "11", then Lessor hereby consents to Lessee restraining said violation or threatened violation by obtaining injunctive relief including, but not limited to, a temporary restraining order and preliminary injunction."

(Lease ¶ 11.) Reading paragraphs 10 and 11 of the lease as a whole, the court accepts Defendant's contention that the term "default" includes failure to pay rent. As is made clear by the plain language of paragraph 11 in the Lease, "failure to pay rent" is specifically carved out as a default. Here, the alleged breach is failure to pay rent, which is an alleged "default" that required notice and an opportunity to cure.

### B. Ambiguity

Plaintiff further argues that the notice-and-cure provision should not be construed as a condition precedent to filing a lawsuit because the provision is ambiguous. "The existence of an ambiguity is a threshold question to be decided by the court as a matter of law." Ellan Corp., Inc. v. Dongkwang Intern. Co., Ltd., No. 09-CV-414 (LAP) 2011 WL 4343844, at *2 (S.D.N.Y. Aug. 15, 2011) (citing Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 66 (2d Cir. 2000). The court is not required to accept a plaintiff's allegation that a contract term is ambiguous, even at the motion-to-dismiss stage. Platinum-Montaur Life Sciences LLC v. Navidea

Biopharmaceuticals, Inc., No. 17-cv-9591 (VEC) 2018 WL 5650006, at *3 (S.D.N.Y. Oct. 1, 2018). The court's reading of the plain language of the notice-and-cure provision does not support Plaintiff's finding of ambiguity.

Under New York common law, an ambiguity exists where the terms of the contract "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 466 (2d Cir. 2010) (citing Int'l Multifoods Corp. v. Comm. Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002) (internal quotations omitted).[7] As stated above, the court accepts the plain meaning of the term "unless" to be an express condition precedent. See Ambrose v. City of White Plains, No. 10-CV-4946 (CS) 2018 WL 1635498, at *12 (S.D.N.Y. Apr. 2, 2018) ("Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation.") (quoting Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989)).

## C. Futility

Plaintiff further argues Defendant had actual notice of its breach in light of other similar actions pending against Defendant and therefore, notice was not required because it would have

---

[7] The cases Plaintiff relies on are distinguishable. In Kass v. Kass, 663 N.Y.S.2d 581 (N.Y. App. Div. 1997), aff'd 91 N.Y. 2d 554 (1998), the court found the provision "[s]hould we for any reason no longer wish to attempt to initiate a pregnancy, we understand that we may determine the disposition of our frozen pre-zygotes remaining in storage" to be ambiguous. Unlike the disputed provision here, which includes the term "unless," the disputed provision in Kass did not include any of the terms courts have typically found to be language of condition. Oppenheimer & Co., 660 N.E. 2d at 418.

been futile.[8] New York common law does not require strict compliance with a contractual notice-and-cure provision when providing an opportunity to cure would be useless, or when it is impossible to cure. Giuffre Hyundai, Ltd. v. Hyundai Motor America, 756 F.3d 204, 209 (2d Cir. 2014) (citing Wolff & Munier, Inc. v. Whiting-Turner Contracting Co., 946 F.2d 1003, 1009 (2d Cir. 1991)). Where a party engaged in fraudulent, illegal, and deceptive business practices and the parties' agreement stipulated against engaging such practices, courts have found such a breach to be incurable and notice to be futile. Giuffre Hyundai, Ltd., 756 F.3d at 206. Here, Plaintiff has not alleged fraud. Moreover, Plaintiff cannot rely on Defendant's alleged breach with other parties, many in different states, which involve different lease agreements, as actual notice for this action.

### D. Sufficient Notice

Finally, Plaintiff argues that if notice was required, Defendant's letter announcing the imposition of the Administrative Fee and Plaintiff's filing of this lawsuit, would have satisfied the notice requirement. As stated above, the court finds the notice-and-cure provision to be an express unambiguous condition precedent. Substantial performance is not enough to fulfill an express condition precedent. Strict compliance is required. Bank of N.Y. Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc., 821 F.3d 297, 317 (2d Cir. 2016) (citing Oppenheimer & Co., 660 N.E. 2d at 419). The court must enforce express conditions, even if enforcement would result in a harsh outcome, because they are manifestation of the parties' intent. Kortright Capital Partners LP v. Investcorp Inv. Advisers Ltd. 327 F. Supp. 3d

---

[8] See Summit Gardens Associates v. CSC ServiceWorks Inc., No. 17-cv-02553 (N.D. Ohio, filed Dec. 7, 2017); Kay-Kay Realty Corp. v. CSC ServiceWorks, Inc., No. 17-cv-07464 (E.D.N.Y., filed Dec. 22, 2017); National 44 Limited Partnership v. CSC ServiceWorks, Inc., No. 18-cv-205 (E.D. Wis., filed Feb. 7, 2019); and Madison Landing LP v. CSC ServiceWorks Inc., No. 18-cv-272 (N.D. Ala., filed Feb. 16, 2018).

13

673, 680 (S.D.N.Y. 2018) (citing Oppenheimer & Co., 660 N.E. at 418). Here, each party agreed to provide written notice in certified mail, return receipt requested, of any claimed breach of the lease. (Lease ¶ 10.)

Even if the notice-and-cure provision was not a condition precedent to filing a lawsuit, Plaintiff's complaint does not constitute valid notice. In Panda Capital Corp. v Kopo Int'l, 662 N.Y.S.2d 584, 586 (N.Y. App. Div. 1997), which Plaintiff relies on (Pl. Opp'n at 9), the court held that filing a lawsuit constituted valid notice when the parties could invoke § 2-17 of the Uniform Commercial Code. Here, the alleged breach of contract is governed by New York common law. (Lease ¶ 10(h).) Even if the lease was governed by the UCC, the offset provision of § 2-17 can only be invoked when both parties breached the same contract. Panda Capital Corp., 662 N.Y.S.2d at 586. Here, Plaintiff argues that Defendant's alleged breach of contract with another party constituted sufficient notice. However, those agreements included different language from the Lease here. The court, therefore, finds that sufficient notice was not provided to Defendant.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's action is not ripe for adjudication and Defendant's motion to dismiss for lack of subject matter jurisdiction (Dkt. 19) is GRANTED.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
July 8, 2019

NICHOLAS G. GARAUFIS
United States District Judge